**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JOHN HADDAD,** | 1:07-cv-01676-OWW-TAG |
| Plaintiff, | **MEMORANDUM DECISION REGARDING PLAINTIFF'S MOTION TO VACATE ARBITRATION AWARD (Doc. 36)** |
| v. | |
| **CHRIS JACKSON,** | |
| Defendant. | |

**I.   INTRODUCTION.**

On December 22, 2009, Plaintiff John Haddad ("Plaintiff") filed the instant motion to vacate an arbitration award pursuant to 9 U.S.C. § 10(a)(1)-(4).  (Doc. 36).

Defendant Chris Jackson ("Defendant") filed opposition to Plaintiff's motion on February 19, 2010.  (Doc. 37).  Plaintiff filed a reply to Defendant's opposition on February 26, 2010. (Doc. 49).  Plaintiff also filed objections to the declarations filed in support of Defendant's opposition on February 26, 2010.  (Docs. 50-57).  A hearing on Plaintiff's motion was conducted on June 25, 2010.

**II. FACTUAL BACKGROUND.**

On September 24, 2008, Plaintiff and Defendant entered into a stipulated judgement purporting to resolve various disputes between

1

the parties, who were neighbors at all times relevant. (Doc. 35). The judgment enjoins each party from engaging in certain conduct and provides that claims for breach of the agreed judgement are subject to mandatory, binding arbitration. (Doc. 35).

In late September 2008, Plaintiff elected to proceed to arbitration in connection with an alleged violation of the stipulated judgement. (Motion to Vacate at 3). Pursuant to the stipulated judgement, Kenneth Byrum was pre-selected as the arbitrator. (Id.). At the time of the arbitration, Mr. Byrum was of counsel to the law firm of Dowling, Aaron, And Keeler ("the Firm") and shared office space with the Firm in Bakersfield, California. (Id.). Mr. Byrum's mediation and arbitration practice operated independently from the Firm, and the Firm had no role in the arbitration between Plaintiff and Defendant. (Klingenberger Dec. at 3).

**Disclosure During First Round of Arbitration Proceedings**

Arbitration commenced on June 22, 2009 at the Firm's Bakersfield office. (Id. at 4); (Byrum Dec. at 2). According to Mr. Byrum, at some point during the first round of proceedings, one of the Firm's attorneys, Daniel Klingenberger, informed Mr. Byrum that a Firm employee was involved in a legal dispute with one of the parties to the arbitration. (Byrum Dec. at 2). Mr. Klingenberger states that he told Mr. Byrum about the Firm employee's involvement with one of the parties on or about June 23, 2009, the second day of the first round of arbitration proceedings. (Klingenberger Dec. at 2). Mr. Klingenberger did not tell Mr. Byrum which party was involved in the dispute and did not convey the nature of the dispute. (Byrum Dec. at 2); (Klingenberger Dec.

at 2).

Mr. Byrum's declaration does not identify the date on which he first disclosed that a Firm employee was involved in a dispute with one of the parties, but Mr. Byrum's declaration states that after discussing the situation with Klingenberger, he disclosed the contents of the conversation to the parties attorney's "before any further hearing." (Byrum Dec. at 2). Plaintiff's attorney, Richard Middlebrook, declares that during "the initial two days of arbitration," Mr. Byrum disclosed to Mr. Middlebrook and Plaintiff's counsel, H. Ty Kharazi, that a Firm employee was involved in a dispute with the one of the parties to the arbitration. (Middlebrook Dec. at 12).

In support of Plaintiff's motion to vacate the arbitration award, Plaintiff's counsel submitted a declaration under penalty of perjury in which he stated, "I do not recall Mr. Byrum telling me about the conflict until I raised the issue on September 29, 2009." (Kharazi Dec. at 2). However, during oral argument, Mr. Kharazi conceded that he recalled Mr. Byrum discussing the issue during the first round of arbitration proceedings.

**The Second Round of Arbitration Proceedings**

The second round of arbitration proceedings commenced in September, 2009. On the morning of September 29, 2009, prior to the start of the arbitration hearing scheduled for that day, Plaintiff encountered Angela Stidham at the front door of the Firm's office. Ms. Stidham, a paralegal at the Firm's Bakersfield office since February 2009, was the Firm employee who was involved

in a legal dispute with Plaintiff. (Stidham Dec. at 2).[1]

The dispute between Ms. Stidham and Plaintiff arose on or about February 13, 2009, regarding a lease agreement. (Id.). Ms. Stidham represented herself in litigation with Plaintiff concerning the lease. (Id.). Ms. Stidham states that she spoke briefly about the dispute with Mr. Klingenberger, her supervisor, but did not get into specifics beyond the name of her landlord and location of her the property subject to the dispute. (Id.). Mr. Klingenberger recalled that Ms. Stidham told him that she was having problems with her landlord "several weeks or months before" June 22, 2009. (Klingenberger Dec. at 2). The Firm had no role and provided no advice to Ms. Stidham regarding her dispute with Plaintiff. (Klingenberger Dec. at 2). Mr. Stidham apparently prepared her pleadings in a document template created by the Firm, as a footer contained on the pleading paper contains the Firm's insignia. (Haddad Dec., Ex. H). However, the header at the top of the first page of Ms. Stidham's pleading clearly indicates that Ms. Stidham was representing herself "in pro per." (Id.).

After seeing Ms. Stidham in the Firm's office space, Plaintiff instructed Mr. Kharazi to discuss the potential conflict of interest with Mr. Byrum. (Id. at 5). In a conference with both parties' attorneys on September 29, Mr. Byrum assured Mr. Kharazi that Ms. Stidham' situation would not affect his decision. (Kharazi Dec. at 5). Mr. Byrum states that both Mr. Kharazi and Mr. Middlebrook expressed their confidence that Mr. Byrum could reach a fair decision. (Byrum Dec. at 2). Mr. Middlebrook also

---

[1] Plaintiff's hearsay objections to paragraph's 6 and 7 of Ms. Stidham's declaration are overruled.

**4**

declares that after Mr. Byrum discussed Ms. Stidham's situation with the parties' attorneys for a second time, both Mr. Middlebrook and Mr. Kharazi told Mr. Byrum that they had no concern about Mr. Byrum's impartiality. (Middlebrook Dec. at 13). Mr. Kharazi's declaration indicates that he did not raise any conflict of interest concerns after the September 29 discussion about Ms. Stidham's situation.

**Alleged Bias During the Proceedings**

According to Plaintiff, during the September 29 arbitration hearing, Mr. Byrum told Plaintiff, who is an Arab-American, "you do not look like a sand nigger to me, you look like a sand honkey." (Motion to Vacate at 6). Mr. Byrum's statement was allegedly made in response to an allegation that Defendant had called Plaintiff a "sand nigger" at some point during their dispute. (Id.). Plaintiff further contends that throughout the proceedings, Mr. Byrum unduly restricted Plaintiff's witnesses from testifying and allowed Defendant to intimidate Plaintiff's witnesses. (Motion to Vacate at 5-7). Mr. Byrum denies ever making a racial slur towards Plaintiff or unduly restricting Plaintiff's witnesses. (Byrum Dec. at 2).

**The Award**

On October 20, 2009, Mr. Byrum issued his arbitration award, finding that Defendant had established that Plaintiff committed 39 violations of the stipulated judgment and imposed a penalty of $5,000 per violation, in accordance with the stipulated judgment. (Motion to Vacate at 7). Mr. Byrum found that Defendant had committed one violation. (Id.). In response to Mr. Byrum's award, Plaintiff wrote Mr. Byrum a letter requesting clarification of the

5

award and requesting a reference in the award to the potential conflict of interest. (Id. at 8). Mr. Byrum denied Plaintiff's request in a written response on October 27, 2009. (Id.). The October 27 letter indicated that Mr. Byrum had disclosed Ms. Stidham's situation during the arbitration proceedings, had not talked to Ms. Stidham about her dispute with Plaintiff until after he entered his award on October 20, 2009, and also indicated that he believed what Ms. Stidham told him. (Id.).

On December 17, 2009, Mr. Byrum entered a final arbitration award which included an award of attorney's fees. (Id. at 9). Plaintiff subsequently filed the instant action seeking to vacate the award.

### III. **LEGAL STANDARD**.

Federal court review of arbitration awards is extremely limited. *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403 (9th Cir. 2007). The Federal Arbitration Act, 9 U.S.C. at § 10, ("FAA") sets forth the grounds upon which a federal court may vacate the decision of an arbitration panel. *E.g. Todd Shipyards Corp. v. Cunard Line, Ltd.*, 943 F.2d 1056, 1060 (9th Cir. 1991). The FAA provides that a district court may make an order vacating an arbitration award upon the application of any party to the arbitration:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

**6**

> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a) (emphasis added). The burden of establishing grounds for vacating an arbitration award is on the party seeking it. *United States Life Ins. Co. v. Superior Nat'l Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010).

A claim that an award was produced by corruption, fraud, or undue means requires a party to show that the fraud, corruption, or undue means was:

> (1) not discoverable upon the exercise of due diligence prior to the arbitration, (2) materially related to an issue in the arbitration, and (3) established by clear and convincing evidence

*A.G. Edwards*, 967 F.2d at 1404. Claims under section 10(a)(1) are subject to waiver. *See, e.g., id.*

The legal standard for "evident partiality" under section 10(a)(2) is "whether there are facts showing a reasonable impression of partiality." *New Regency Prods., Inc. v. Nippon Herald Films, Inc.*, 501 F.3d 1101, 1106 (9th Cir. 2007). Claims under section 10(a)(2) are subject to waiver. *E.g. Theis Research, Inc. v. Brown & Bain*, 400 F.3d 659, 666 (9th Cir. 2004).

Arbitrators enjoy "wide discretion to require the exchange of evidence, and to admit or exclude evidence." *United States Life Ins. Co.*, 591 F.3d at 1176 (citing *Industrial Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1444 (11th Cir. 1998)). Arbitration proceedings are not constrained by formal rules of procedure or evidence. *Industrial Risk Insurers*, 141 F.3d at 1443-44. A showing of prejudice is a prerequisite to relief based on an arbitrator's exclusion of evidence. *E.g. Employers*

**7**

*Ins. of Wausau v. National Union Fire Ins. Co.*, 933 F.2d 1481, 1490 (9th Cir. 1991).

## IV. <u>DISCUSSION</u>.

Plaintiff contends that the arbitrator's award must be set aside on the grounds that (1) the arbitrator's relationship with Ms. Stidham constituted evident partiality; (2) the arbitrator was racially biased toward Plaintiff; (3) the arbitrator refused to hear pertinent and material testimony on Plaintiff's behalf; and (4) the arbitrator intimidated Plaintiff's witnesses and permitted Defendant to intimidate Plaintiff's witnesses.

**A. The Arbitrator's Purported Relationship With Ms. Stidham**

**1. Failure to Disclose**

Plaintiff contends that the arbitrator's failure to disclose his business relationship with Ms. Stidham evinces evident partiality. Section 10(a)(2) of the FAA provides that the court may vacate an arbitration award "where there is evident partiality... in the arbitrators." 9 U.S.C. § 10(a)(2) (2009). The legal standard for "evident partiality" is "whether there are facts showing a reasonable impression of partiality." *New Regency Prods., Inc. v. Nippon Herald Films, Inc.*, 501 F.3d 1101, 1106 (9th Cir. 2007).

Plaintiff has failed to carry his burden of establishing that the timing and manner of Mr. Bryum's disclosure evinces evident partiality. In light of the declarations contained in the record and Mr. Kharazi's concession during oral argument, the preponderance of the evidence establishes that Mr. Bryum immediately disclosed that a Firm employee was involved in a legal dispute with one of the parties on or about the first or second day

**8**

of the arbitration proceeding.  (Byrum Dec. at 2; Middlebrook Dec. at 12-13, Klingenberger Dec. at 2).[2]  The fact that Mr. Byrum disclosed the situation immediately is also corroborated by a letter dated October 27, 2009, in which Mr. Byrum stated that he had informed Plaintiff's counsel of Ms. Stidham's situation after the first day of the arbitration hearing.  (Byrum Dec., Ex. A). Plaintiff's counsel sent at least two letters to Mr. Byrum subsequent to receiving Byrum's October 27 letter, but did not contest Mr. Byrum's statement that Plaintiff was informed of the situation on the second day of arbitration.  (Byrum Dec. at 2; Kharazi Dec., Ex. L).[3]

    The evidence offered by Plaintiff is insufficient to permit a finding that Mr. Byrum did not disclose Ms. Stidham's situation on either the first or second day of the arbitration.[4]  Mr. Kharazi's admission during oral argument nullifies his assertion in his declaration that he did not recall Mr. Byrum making such a disclosure prior to September 29. Although Plaintiff also declares that "nothing was ever disclosed to us about Ms. Stidham during the first three days of hearings," (Haddad Dec. at 4), Plaintiff's

---

[2] Plaintiff's relevance objections to paragraphs 24 and 25 of Mr. Middlebrook's declaration are sustained.  The remaining objections are overruled.

[3] Exhibit L is a letter from Mr. Kharazi to Mr. Byrum dated November 17, 2009. The letter references "outstanding issues" but does not contest the assertion contained in the October 27 letter that Plaintiff was made aware of Ms. Stidham's situation on the second day of arbitration.  Exhibit L alludes to a November 4, 2009 letter from Mr. Kharazi to Mr. Byrum, but that letter is not contained in the record.

[4] At oral argument, Plaintiff's counsel suggested that there is a factual discrepancy with respect when and how Mr. Klingenberger discovered that Ms. Stidham was involved in a dispute with Plaintiff.  This discrepancy is immaterial, because it is undisputed that Plaintiff was on notice of all relevant facts before the entry of the arbitration award, yet failed to act on such information.

**9**

declaration does not controvert the evidence on the record which establishes that Mr. Byrum disclosed the situation *to Mr. Kharazi*, (Byrum Dec. at 2). Accordingly, because the court finds that Mr. Byrum disclosed the potential conflict as soon as he learned of its existence, the record does not evince evident partiality based on an alleged failure to disclose Ms. Stidham's situation.

### 2. Failure to Investigate

An arbitrator owes a duty to investigate potential conflicts of interest with the parties subject to the arbitration. *See, e.g., Schmitz v. Zilveti*, 20 F.3d 1043, 1049 (9th Cir. 1994). Plaintiff complains that Mr. Byrum breached the duty to investigate potential conflicts of interest because he had constructive knowledge of the litigation between Ms. Stidham and Plaintiff at the beginning of the arbitration proceeding but failed to investigate it further.

Mr. Byrum first had reason to know of a potential conflict on or about June 23, when Mr. Klingenberger informed him that Ms. Stidham had a legal dispute with an unidentified party to the arbitration. After he was informed of the situation by Mr. Klingenberger, Mr. Byrum had all the information he needed to assess the situation: he knew the extent of his relationship with Ms. Stidham and knew that she had a dispute with one of the parties in her personal capacity. No other information was required to make an informed decision on whether a conflict of interest existed. Further investigation into Ms. Stidham's situation would have done nothing to clarify the extent to which *Mr. Byrum's* interests were in conflict with any of the parties' interests. *See New Regency Prods.,* 501 F.3d at 1110 (9th Cir. 2007) (discussing arbitrator's duty to investigate the extent to which *his* interest might have

become implicated); *Schmitz*, 20 F.3d at 1049 (same).[5] Plaintiff's failure to investigate claim lacks merit.

### 3. Waiver

Assuming *arguendo* that the record could support a finding of evident partiality, Plaintiff waived his claim by failing to lodge any objection until after the entry of the arbitration award. It is settled that claims alleging bias on behalf of an arbitrator pursuant to section 10(a)(2) of the FAA are subject to waiver. *Fid. Fed. Bank, FSB v. Durga Ma Corp.*, 386 F.3d 1306, 1313 (9th Cir. 2004); *see also Sheet Metal Workers International Asso. Local Union # 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 746 (9th Cir. 1985) (stating that bias claim was waived where party knew of interests prior to seating of arbitrators but did not object) (citing *Kodiak Oil Field Haulers, Inc. v. Teamsters Union*, 611 F.2d 1286, 1290 (9th Cir. 1980) (same)).

In *Durga*, the party alleging bias had reason to know that one of the arbitrators was likely to have some personal or professional connection to the opposing party prior to the arbitration proceeding but did not request any disclosure of potential conflicts until after an interim award was entered. Subsequent to issuance of the interim award, the party obtained actual knowledge of the arbitrator's personal and professional relationships with the adverse party. The Ninth Circuit rejected the party's bias claim, holding that a party with constructive knowledge of potential bias waives its right to challenge an arbitration award under section

---

[5] *New Regency* and *Schmitz* are the only two authorities cited by Plaintiff in support of its investigation claim. (Motion to Vacate at 15-16). Neither case supports the proposition that Mr. Bryum should have inquired into the substance of Ms. Stidham's dispute with Plaintiff.

**11**

10(a)(2) of the FAA if it fails to object until after an interim award is issued. 386 F.3d at 1313. *A fortiori*, where a party has actual knowledge of a potential conflict before the conclusion of the arbitration hearing but fails to raise the argument until after entry of a final arbitration award, any bias claim is waived. *See id., accord Fortier v. Morgan Stanley DW, Inc.*, 2006 U.S. Dist. LEXIS 79027*7 (N.D. Cal. 2006).

Plaintiff argues that he did not waive his conflict of interest claim because (1) by the time Plaintiff realized Ms. Stidham worked at the Firm on September 29, "it was futile for Plaintiff's counsel to object to Ms. Byrum on conflict grounds because by that point Mr. Byrum's mind was made up (in favor of defendants);" and (2) he did not learn of the "true nature" of the relationship between Ms. Stidham and Mr. Byrum until after the arbitrator rendered his award. (Motion to Vacate at 22).

With respect to Plaintiff's first argument, there is no evidence to support Plaintiff's contention that a request for recusal or further disclosure would have been futile, and Plaintiff cites no authority which supports the notion that a party's waiver may be excused the basis of alleged futility. With respect to Plaintiff's second argument, Plaintiff's assertion of ignorance is contrary to the record. It is undisputed that, at the very latest, Plaintiff's counsel was aware of all relevant facts by September 29, 2009, during the second round of arbitration proceedings.[6] Despite

---

[6] At oral argument, Plaintiff's counsel suggested that he did not have full knowledge of the conflict of interest until he received Mr. Byrum's October 27, 2009 letter. Assuming *arguendo* the October 27 letter was of such significance that it created a new basis for a bias claim, Plaintiff failed to raise any objection during the intervening six week period between the date of Mr. Byrum's letter and entry of the final arbitration award on December 17, 2009. (Kharazi

**12**

having actual knowledge of the fact that Ms. Stidham worked for the Firm prior to the conclusion of the second round of arbitration proceedings, Plaintiff failed to request further disclosure, failed to move for recusal, and failed to express any concerns about the situation to Mr. Byrum until after the arbitration award was rendered. "By failing to object to the arbitrator proceeding as arbitrator, and continuing to participate in the hearing after the arbitrator's full disclosure," Plaintiff waived any claim that the arbitrator's award should be vacated based on a conflict of interest. *Theis Research, Inc. v. Brown & Bain*, 400 F.3d 659, 666 (9th Cir. 2004).

**B. Racial Bias Claim**

Plaintiff contends that Mr. Byrum made a derogatory remark toward Plaintiff during the arbitration proceeding, evincing evident partiality. Specifically, Plaintiff contends that Mr. Byrum stated that Plaintiff looked like a "sand honkey" during Plaintiff's testimony on September 29, 2009. (Haddad Dec. at 7; Kharazi Dec. at 5). Mr. Bryum denies ever making the derogatory comment Plaintiff accuses him of. (Byrum Dec. at 4). Mr. Middlebrook's declaration states that he was present during Plaintiff's testimony, and that Mr. Byrum never appeared rude, biased, or prejudiced against Plaintiff. (Middlebrook Dec. at 10). Similarly, Amy Hulick, an attorney who observed Mr. Haddad's testimony at the arbitration proceeding on behalf of Defendant's insurer, submitted a declaration in which she states that she never witnessed Mr. Byrum's conduct to be prejudicial against Plaintiff. (Hulick Dec.

---

Dec., Ex. M).

**13**

at 3). However, neither Mr. Middlebrook, Ms. Hulick, nor any other declarants other than Mr. Byrum directly controvert Plaintiff's allegation that Mr. Byrum made the "sand honkey" comment.

Assuming *arguendo* that Mr. Byrum made the comment he is accused of, Plaintiff waived his racial bias claim by failing to raise the issue prior to the final resolution of the arbitration proceeding. *E.g. Theis Research*, 400 F.3d at 666. According to Plaintiff, Mr. Byrum's derogatory statement occurred on September 29, 2009 before the conclusion of the arbitration hearing and several weeks before the issuance of the arbitration award.[7] Significantly, although Plaintiff's counsel wrote Mr. Byrum a letter that specifically referenced an "potential conflict of interest" based on Mr. Byrum's purported relationship with Ms. Stidham, Plaintiff's counsel made absolutely no mention of racial bias in the letter. Plaintiff waived his claim of racial bias by waiting until after the entry of a final arbitration award to accuse Mr. Byrum of being racist. *Id*.

**C. The Arbitrator's Exclusion of Certain Testimony**

Plaintiff complains that Mr. Byrum restricted the testimony of certain witnesses offered by Plaintiff at the arbitration proceeding. (Motion to Vacate at 20). As Plaintiff acknowledges, a showing of prejudice is a prerequisite to relief based on an arbitrator's exclusion of evidence. (Motion to Vacate at 21) (citing *Employers Ins. of Wausau*, 933 F.2d at 1490).

Plaintiff points to the following facts in support of his

---

[7] Notably, September 29, 2009 is also the day on which Plaintiff and his counsel contend they first discovered the alleged conflict of interest with Ms. Stidham. Plaintiff's failure to raise a claim of bias after allegedly being subjected to such a derogatory remark on the very same day he discovered that Ms. Stidham worked for the Firm is suspect.

**14**

misconduct claim:

>   1. "Mr. Byrum told Mr. Calhoun on at least two occasions to 'get his ass out of here.'"
>
>   2. Mr. Byrum "would not allow Mr. Gonzales to testify about what he knew regarding the paint ball incidences in the neighborhood and told him that he 'did not know what he was talking about.'"
>
>   3. "When Mr. Myers tried to testify regarding whether Defendant Jackson cut the fence and let Plaintiff's cow out of its enclosure, Mr. Byrum told him to 'sit down and be quiet.'"
>
>   4. Mr. Byrum did not allow Mr. Myers to "fully explain" that he had seen several homes other than Defendant's being paint-balled and had never seen Plaintiff with paintball guns.
>
>   5. "[W]hen Mrs. Pena sought to testify regarding the fact that she had personally seen Defendant Jackson's house marked with paintball's after Plaintiff had moved out, she 'was not allowed to testify about this issue.'"

(Motion to Vacate at 21).

Plaintiff has not established that Mr. Byrum abused the wide discretion afforded to arbitrators in making evidentiary rulings. *See United States Life Ins. Co.*, 591 F.3d at 1176. Almost all of the evidence Plaintiff complains was improperly excluded was either duplicative of other evidence presented during the arbitration or irrelevant to the time period germane to the proceeding.

Assuming *arguendo* that the arbitrator's exclusion of the evidence Plaintiff complains of was error, Plaintiff has failed to establish prejudice. With respect to Mr. Calhoun, it is undisputed that he was permitted to testify fully, despite the fact that Mr. Calhoun was subject to a restraining order which prohibited close contact with Defendant. (Byrum Dec. at 3; Middlebrook Dec. at 6-7; Calhoun Dec. at 1). Mr. Byrum admits telling Mr. Kharazi to instruct Calhoun to "get his ass out of here," but this statement

**15**

1 was made after Mr. Calhoun had fully testified and agreed not to
2 return, and Mr. Bryum avers that he made the statement because Mr.
3 Calhoun's continued presence was in violation of a restraining order
4 as well as the parties' agreement. (Byrum Dec. at 3).[8]  Plaintiff
5 does not allege that Mr. Calhoun was prohibited from offering any
6 evidence, and although Mr. Byrum's language may have been
7 inappropriate, there is no showing that Mr. Bryum's statement
8 prejudiced Plaintiff.

9     Mr. Gonzales declaration indicates that he intended to offer
10 testimony "about acts of vandalism and paint balling by the youth
11 in our neighborhood," but that the arbitrator did not permit him to
12 testify. (Gonzales Dec. at 1).  Assuming that exclusion of Mr.
13 Gonzales' testimony was error, it was not prejudicial error, because
14 Plaintiff's witness Dwayne Woodward offered extensive testimony on
15 the subject of youth paintball practices in the area. (Woodward
16 Dec. at 2).  Mr. Bravo also offered the same testimony Mr. Gonzales
17 intended to give regarding the paintball issue. (Bravo Dec. at 1)

18     Mr. Myers' testimony "was directed to the actions of
19 [Defendant] cutting [Plaintiff's] fence to allow the cows to get
20 out." (Myers Dec. at 1).  Mr. Myers also wanted to testify about
21 Defendant's past attempts to harm Plaintiff's animals as well as
22 paintball vandalism in the neighborhood. (Myers' Dec. at 2). No
23 prejudice resulted from the limitations placed on Mr. Myers'
24 testimony, because Mr. Woodward and Mr. Bravo provided essentially
25 the same testimony that Mr. Myers intended to offer on such

---

[8] Mr. Calhoun's continued presence prompted a call to the police later on in the proceeding. (Bryum Dec. at 3; Middlebrook Dec. at 9).

**16**

matters.[9] (Woodward Dec. At 2-4; Bravo Dec. at 1-2). In addition to testifying about the paintball issue, Mr. Bravo testified in detail about the issue of Defendant's alleged attempts to harm Plaintiff's animals. (Bravo Dec. at 1-2). Mr. Bravo's testimony was based on his personal observations, as opposed to Mr. Myers' testimony, which was based on speculation and deduction. (Bravo Dec. at 1-2). For example, Mr. Myers' wanted to testify that "it was not hard to see that the animals were 'encouraged' to come on the road that night" and that "cows do not voluntary [sic] walk onto the road in the middle of the night." (Myers' Dec. at 2). In light of Mr. Bravo's more persuasive testimony on the same issue, the limits placed on Mr. Myers' testimony were not prejudicial.

Finally, the limits placed on Ms. Pena's testimony could not have prejudiced Plaintiff. Ms. Pena's testimony was based entirely on her observations in the neighborhood after time period relevant to the parties dispute. (Pena Dec. at 1). Pena's testimony that she witnesses paintball vandalism after Plaintiff left the neighborhood would have been minimally relevant and would have been cumulative of the testimony offered by Mr. Woodward and Mr. Bravo.

**D. Witness Intimidation Claim**

Plaintiff contends that Mr. Byrum intimidated and "permitted Defendant Jackson to intimidate Plaintiff's witnesses, in violation of the 'undue means' clause of section 10(a)(1)" of the FAA. (Motion to Vacate at 22). Plaintiff points to the following facts in support of his undue influence claim:

   1. In response to Ms. Pena's attempt to testify that

---

[9] Mr. Myers' declaration suggests that we was allowed to offer some testimony about the fence incident, although it is ambiguous.

**17**

>Defendants constantly photographed her an intimidated her after finding out that she had been called to testify, Mr. Byrum stated "I don't want to hear that crap."
>
>2. "Instead of reassuring Mr. Gonzales' safety, Mr. Byrum doubted Mr. Gonzales' credibility" with respect to Mr. Gonzales' claim that Defendant parked his car near Mr. Gonzales' driveway and stared at Mr. Gonzales menacingly.
>
>3. "Mr. Myers 'felt humiliated and insulted' by Mr. Byrum."
>
>4. Mr. Byrum joked around with Defendant during the final day of hearings in which Defendant appeared visibly intoxicated.

(Motion to Vacate at 22-23).

"Undue influence" for the purposes of section 10(a) of the FAA means any "improper or wrongful constraint, machination, or urgency of persuasion whereby the will of a person is overpowered." *A.G. Edwards*, 967 F.2d at 1402. An undue influence claim must be established by clear and convincing evidence. *Id*. A party raising an undue means claim for the first time in a motion to vacate the arbitration award must establish that the claim was not discoverable upon the exercise of due diligence prior to the conclusion of the arbitration. *See id*. (citing *Lafarge Conseils Et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.*, 791 F.2d 1334, 1339 (9th Cir. 1986)).[10]

Plaintiff's allegations do not establish that any of Plaintiff's witnesses had their will overpowered, and the declarations offered in support of Plaintiff's undue influence claim do not satisfy the "clear and convincing evidence" standard.

---

[10] In *Kaiser Cement & Gypsum Corp.*, the court held that a fraud claim could not be sustained where party suspected fraud during the course of the arbitration but failed to raise the issue until after the arbitration award was entered. 791 F.2d at 1339. In *A.G. Edwards*, the Court held that the test for fraud under the FAA is applicable to claims of "undue means."  967 F.2d at 1404.

**18**

Further, Plaintiff waived his undue influence claim by failing to raise it until after the arbitration award was entered. *See, e.g., A.G. Edwards*, 967 F.2d at 1404; *Theis Research*, 400 F.3d at 666 (noting that party had waived undue influence claim for failing to raise it before the arbitrator). Accordingly, Plaintiff is not entitled to relief on his undue influence claim.

### ORDER

For the reasons stated, IT IS ORDERED:

1) Plaintiff's motion to vacate the arbitration award is DENIED; and

2) Defendants shall submit a form of order consistent with this Memorandum Decision within five (5) days following electronic service of this decision.

IT IS SO ORDERED.

**Dated:   July 16, 2010**            /s/ Oliver W. Wanger
                                    UNITED STATES DISTRICT JUDGE